Pennsylvania Public Utility Commission, Plaintiff *v.* Norfolk and Western Railway Company, Defendant. United Transportation Union, Intervening Party Plaintiff.

Argued May 12, 1983, before Judges BLATT, MAC-PHAIL and BARBIERI, sitting as a panel of three.

*Terrance J. Fitzpatrick*, Assistant Counsel, with him *Barry J. Grossman*, Assistant Counsel, *Charles F. Hoffman* and *Joseph J. Malatesta, Jr.*, Chief Counsels, and *Alfred N. Lowenstein*, Deputy Chief Counsel, for plaintiff.

*H. Woodruff Turner*, with him *Alexander C. Black, Kirkpatrick, Lockhart, Johnson & Hutchison*, and *Henry D. Light*, Assistant General Counsel, for defendant.

*Thomas P. Shearer*, for intervening party plaintiff.

OPINION BY JUDGE MACPHAIL, July 8, 1983:

On February 3, 1981, the Public Utility Commission (PUC) filed a complaint in mandamus, addressed to our original jurisdiction, seeking enforcement of a 1977 PUC order which directed the Norfolk and West-

ern Railway Company (N & W) to discontinue the operation of any of its locomotives in Pennsylvania which were not equipped with "a flush type toilet or similar device" as required by 52 Pa. Code §33.62.[1] Following a non-jury trial, our Court per Senior Judge KALISH, granted the mandamus relief requested. N & W's exceptions to the trial judge's decision are presently before us for disposition.

In order to provide some perspective to the instant proceedings, we note that the PUC order here sought to be enforced was the result of a complaint instituted in 1976 by the Pennsylvania State Legislative Board, United Transportation Union (UTU)[2] alleging that the N & W Sanitary Toilet System (N & W System)[3] does not comply with 52 Pa. Code §33.62. Following a public hearing the PUC determined that the N & W

---

[1] N & W was given 120 days from the date of service of the PUC order to bring its locomotives into complaince with 52 Pa. Code §33.62, which provides, in pertinent part, as follows:

(a) All locomotives operated by or on each of the railroads in this Commonwealth, except those specifically exempted, shall be equipped with flush toilets or similar devices which sanitarily dispose of human waste matter, together with toilet paper properly protected from soil prior to use.

[2] UTU was granted status as an intervenor in the instant case on May 14, 1981.

[3] The N & W System was described in the PUC's order as follows:

15. The N & W sanitary toilet system is composed of a combination wash basin/urinal, and a toilet.

16. The toilet consists of a hollow seat fastened to the floor of the locomotive. The user inserts a polyethylene bag through the hole in the seat and drapes the top of the bag over the seat. After use, the bag is supposed to be sealed with a non-slip tie and placed in a plastic holding container. The container must be carried in the hood of the locomotive until disposed of in an off-site pathological incinerator.

System "does not sanitarily dispose of human waste matter within the meaning of 52 Pa. Code §33.62" and ordered prompt compliance with its regulations. The PUC's order of July 6, 1977, which was appealed by N & W, was ultimately affirmed by our Supreme Court in *Norfolk & Western Railway Co. v. Pennsylvania Public Utility Commission*, 489 Pa. 109, 413 A.2d 1037 (1980), *rev'g* 41 Pa. Commonwealth Ct. 634, 399 A.2d 1184 (1979).

The PUC instituted the present enforcement action based on its belief that N & W has failed to bring its locomotives into compliance with 52 Pa. Code §33.62. Several pre-trial rulings were made subsequent to the filing of the complaint[4] including one which granted the PUC's motion to limit the scope of evidence at trial so as to restrict evidence which might establish that operational difficulties with the N & W System have been corrected rendering the N & W System sanitary and in compliance with 52 Pa. Code §33.62. The PUC took the position that its 1977 order requires that the N & W System be replaced with a different system and that the correction of operational difficulties cannot serve to bring the existing system into compliance.

Following the trial, which was held on November 23, 1982, Senior Judge KALISH entered an order requiring that N & W submit to the PUC, within 45 days, plans, drawings, blueprints, and a list of potential suppliers for the installation of a sanitary tiolet system in compliance with 52 Pa. Code §33.62. It was further ordered that the plans be implemented as soon as possible after PUC approval thereof, but not later

---

[4] On April 1, 1981, N & W's preliminary objection in the nature of a demurrer was overruled and the PUC's motion for peremptory judgment was denied. In addition, on April 20, 1982 N & W's counterclaim in the nature of a declaratory judgment action was stricken pursuant to Pa. R.C.P. No. 1096

than the next scheduled three and one-half year overhaul of the locomotives.

N & W has filed numerous exceptions to the trial judge's decision. Since we agree with N & W's argument that the trial judge improperly restricted the trial to the issue of whether or not N & W had installed a *new* sanitary toilet system, we need not address many of the exceptions.

The trial judge, in his memorandum opinion filed in support of the order limiting the scope of evidence at trial, stated as follows:

> The Public Utility Commission has filed a motion in limine to restrict the scope of evidence at trial, that N & W should not be permitted at this time to present evidence that its system could or has been corrected in its operation to make it sanitary.
>
> This court agrees with that contention and grants the Public Utility Commission's motion.
>
> . . . .
>
> Whether the present system has been so corrected that it is now a sanitary system and disposes of human waste, is a matter which is peculiarly within the competence of the Public Utility Commission.

*Pennsylvania Public Utility Commission v. Norfolk & Western Railway Co.* (No. 212 C.D. 1981, filed October 4, 1982), slip op. at 3-4. We think that this ruling was in error.

In order for the PUC to be entitled to mandamus relief it must have a clear legal right to compel the performance by N & W of a ministerial act or mandatory duty. In addition, N & W must have a corresponding duty and there must be a want of other appropriate or adequate remedies at law.[5] *See, U. S.*

---

[5] Section 502 of the Public Utility Code (Code), 66 Pa. C. S. §502 clearly gives the PUC the power to institute the instant man-

*Steel Corp. v. Papadakos*, 63 Pa. Commonwealth Ct. 213, 437 A.2d 1044 (1981). In order to reach a determination that the PUC has a clear legal right to certain actions on the part of N & W and that N & W has a corresponding duty to so act, it must first be determined that N & W has, in fact, not complied with the PUC mandate. The PUC concedes that the issue of compliance with its 1977 order is central to the case, but argues that evidence that the N & W System has been brought into compliance through the correction of operational difficulties should not be allowed. This conclusion follows from the PUC's position that its 1977 order requires that a *different* sanitary toilet system be developed and installed in N & W locomotives. Thus, the PUC would limit evidence of compliance to evidence showing that N & W has installed a new sanitary toilet system in its locomotives.

We have carefully studied the 1977 PUC order and cannot agree that it constitutes a ruling that the N & W System cannot be made sanitary through the correction of operational problems. Instead, we think the ruling addresses the N & W System as it was operating at the time of the public hearing in 1977. The PUC's findings demonstrate that several operational deficiencies provided a basis for its conclusion that the N & W

---

damus action. We cannot agree with N & W that the PUC, having already conducted proceedings on the UTU complaint, must again proceed by complaint to enforce its order pursuant to Section 701 of the Code, 66 Pa. C. S. §701. Were we to so interpret the Code we would be denying the PUC the power which it is specifically granted by Section 502 to seek enforcement of its order through an action in mandamus. Moreover, we think there is a basic difference between a complaint proceeding under Section 701, which would simply result in another administrative order, and a proceeding under Section 502 whereby the enforcement powers of this Court may be employed to bring about compliance with the original administrative order.

System did not sanitarily dispose of human waste matter. Moreover, our Supreme Court has indicated that the possibility does exist that N & W can improve the operation of its present system in order to comply with the PUC order. The Court stated that:

> [W]e fail to see how compliance with the PUC requirement that appellee's trains be equipped with devices that operate in a sanitary manner necessarily involves "discarding presently installed equipment and installing new equipment at great additional expense." If, as appellee claims, the "NW Sanitary Toilet System" is "sanitary and reliable," and the unsanitary conditions stem from "operational difficulties," then appellee should be able to comply with the PUC order by correcting what it terms "operational difficulties" without replacing the entire system.

*Norfolk & Western Railway Co.*, 489 Pa. at 126, 413 A.2d at 1046 (footnote omitted). We conclude, based on the Supreme Court's statement as well as our own interpretation of the PUC's order, that the issue of compliance in the instant case must include consideration of whether N & W has taken actions which *now* render its system sanitary.

We observe that during the trial the trial judge did allow N & W to produce evidence regarding actions which N & W has taken in an attempt to improve its present system. It is difficult for us to tell from the record before us, however, whether the trial judge viewed this evidence as indicative only of the fact that a *new* system has not been installed, thus (according to the PUC's theory) requiring the grant of mandamus relief, or whether he independently reviewed the evidence to determine whether the system is now sanitary in light of the changes made. We, accordingly, conclude that a new trial should be granted on the

issue of whether or not N & W's current system has been rendered sanitary through the correction of operational difficulties.

N & W also contends that if its present system is found not to comply with 52 Pa. Code §33.62, necessitating the installation of an entirely different system, then the issue of an undue burden on interstate commerce, which was previously raised before our Supreme Court, must be reconsidered. N & W contends that the Supreme Court's finding of no undue burden on interstate commerce was dependent on N & W's ability to retain its present system with minor expense and alterations. We disagree. The specific holding of our Supreme Court on this issue in *Norfolk & Western Railway Co.*, 489 Pa. at 113, 413 A.2d at 1039 was as follows:

> We ... hold that: ... (3) enforcement of the PUC regulation does not unduly burden interstate commerce....

We, of course, are bound by this holding and do not view it as being premised on the retention of the N & W System. We, accordingly, think the trial judge properly excluded evidence which N & W sought to produce regarding the cost of alternate sanitary toilet systems and their concomitant impact on interstate commerce.

Since we are ordering a new trial on the issue of whether or not the N & W System is now in compliance with 52 Pa. Code §33.62 we think it would be premature to rule on N & W's final argument that the PUC has failed to establish its entitlement to mandamus relief.

We, accordingly, will vacate the order of the trial judge and order a new trial on the issue of whether or not the N & W System as it is presently operated is in compliance with 52 Pa. Code §33.62.

428

### Order

The order of this Court in the above-captioned action, dated November 23, 1982, is hereby vacated. It is further ordered that a new trial be conducted in accordance with the foregoing opinion.